IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-00306-01-CR-W-GAF |
| ) | |
| FREYA D. PEARSON, ) | |
| ) | |
| Defendant. ) | |

ORDER

Pending before the Court is Defendant Pearson's Motion to Sever Counts for Trial (doc #48). Defendant argues that Counts One through Eight should be severed and separately tried from Count Nine.

I. THE INDICTMENT

On October 28, 2014, the Grand Jury returned a nine count indictment against defendant Freya D. Pearson. The indictment charges in part:

Introduction

1. In 2008, Marva Wilson won approximately $2 million in the Missouri lottery. Wilson was 60 years old at the time and financially unsophisticated. Upon winning the lottery, Wilson bought two houses and with the aid of a financial advisor, established an annuity that would have paid her approximately $30,000 per year for the rest of her life.

2. In September 2009, defendant Freya Pearson created the nonprofit entity Recidivism at Work (RAW).

3. In approximately January 2010, Wilson was introduced to Pearson, who was unemployed. At that time, Pearson's only income came from child support and Social Security benefits for one of her children. In 2011, Pearson also began receiving welfare and/or food stamp benefits.

## Scheme and Artifice to Defraud Wilson and to Evade Taxes

4. In the spring of 2010, Pearson convinced Wilson to wire transfer a total of $480,000 to Pearson's account. Whether the money was an investment or a business loan, Pearson materially omitted to disclose to Wilson that she would use the money to gamble and for her own personal expenses.

5. On or about April 22, 2010, Pearson opened a Bank of America nonprofit checking account, number ending 6167, in the name of RAW, over which Pearson had sole signature authority. Pearson instructed Wilson to withdraw her lottery winnings from a John Hancock annuity account that had been established for Wilson by a legitimate financial advisor; the funds were then deposited into Wilson's personal checking account at UMB, account number ending 5583.

6. On April 23, 2010, May 12, 2010, and June 3, 2010, in the Western District of Missouri, at Pearson's direction, Wilson wired the amounts of $180,000, $240,000, and $60,000, respectively, from her UMB checking account into Pearson's RAW checking account, for a total of $480,000.

7. Pearson used the $480,000 to gamble, travel, buy cars, clothes, and furniture, and pay rent while she lived in the St. Louis metropolitan area. No identifiable money was used for the nonprofit entity, nor for any business purpose. Between July 2010 and August 2011, Pearson deposited a total of $38,170 into Wilson's account disguised as annuity or allowance payments, bringing Pearson's unreported income total to $441,830.

8. On or about May 18, 2010, Pearson set up an additional Bank of America account for RAW, savings account number ending 5535, which was used only to receive transfers from the RAW checking account number 6167.

9. Pearson filed for Chapter 7 bankruptcy protection on December 2, 2010, in St. Louis, Missouri, and submitted schedules she signed under penalty of perjury stating she had only $1,770 in assets, $91,883.42 in unsecured debts, and no job. Pearson did not disclose either of the RAW bank accounts, which on December 2, 2010, had balances of $51,493.99 and $5,012.34, for a total of $56,506.33. Nor did Pearson disclose any supposed debt owed to Wilson. Pearson received a discharge of her debts on March 15, 2011.

10. Pearson was first questioned by law enforcement in 2011; at that time she claimed the money from Wilson was an investment. Pearson also falsely stated that: 1) Pearson had received only $200,000 from Wilson; 2) Pearson used the money for business; and 3) Pearson had two other 'investors.' Pearson further complained that Wilson spent too much.

11. In 2013, Pearson produced a supposed loan agreement in which Wilson was referred to as an investor and in which Wilson agreed to lend $420,000 to Pearson, which Pearson would repay at the rate of $1,200 per month to be repaid in full by three years (payments of $1,200 a month for three years would total $43,200). The 'agreement' falsely stated that $60,000 had already been repaid by Pearson to Wilson, when in fact Wilson wired $60,000 into Pearson's account on June 3, 2010. As noted above, Pearson made random payments of a total of $38,170 to Wilson, using Wilson's own money before stopping entirely in August 2011.

12. Pearson filed no tax return for tax year 2010.

Scheme and Artifice to Defraud Weston Housing Authority

13. In March 2010, Pearson applied for federal housing benefits, specifically the Section 8 tenant voucher housing program. The Section 8 program assists low-income families with housing, by paying most or all the beneficiary's rent. Beneficiaries must certify annually their income and assets to determine whether they still qualify for these federal benefits. Pearson was admitted to the Section 8 program on March 26, 2010. She received federal housing benefits from the Weston Housing Authority from April 2010 through April 2014.

14. On December 2, 2010, Pearson filed a bankruptcy petition in St. Louis, Missouri, which she signed under penalty of perjury stating that she had lived in St. Louis for 180 days, or since on or about June 4, 2010. Pearson lived in the St. Louis area through March 2012, while she continued to receive federal housing benefits from the Weston Housing Authority for a rental home in Kansas City, Missouri.

15. On or about March 2012, Pearson was approved for transfer of benefits to Orange County, California, although her benefits were still paid by the Weston Housing Authority. Pearson received public housing benefits until April 2014, for a total benefit amount of $76,837.70.

16. Pearson defrauded Wilson of a total of $441,830. Pearson evaded $122,000 in federal income tax. Pearson defrauded the Weston Housing Authority of $76,837.70. Pearson thus caused a total loss of at least $640,667.

(Doc #1 at 2-5)

Counts One through Three of the indictment charge defendant Pearson with wire fraud; setting forth the three wire transfers from Wilson's UMB account number 5583 to Pearson's RAW account number 6167. Counts Four through Seven charge defendant with money laundering of the wire fraud proceeds. Count Eight charges defendant with tax evasion of the taxes owed on

3

defendant's income of $441,830, the wire fraud proceeds. Count Nine charges defendant with making false statements to the Department of Housing and Urban Development between March 2010 and February 14, 2011. Specifically:

> 1) that she had only $60 in bank accounts, when in fact, on February 14, 2011, she had at least $3,200 in bank accounts controlled by her; 2) that she lived in Kansas City, Missouri, when in fact, she moved to the St. Louis metropolitan area; and 3) that she [had] no other income, when in fact she received interest income from her Bank of America RAW savings account number 5535.

(Doc #1 at 7-8)

## II. DISCUSSION

Whether two or more offenses can be joined in a single indictment is governed by Rule 8(a) of the Federal Rules of Criminal Procedure. Rule 8(a) provides:

> (a) **Joinder of Offenses.** The indictment ... may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed.R.Crim.P. 8(a).

Relief from proper, but nevertheless prejudicial, joinder is governed by Rule 14 of the Federal Rules of Criminal Procedure. That rule provides in part:

> (a) **Relief.** If the joinder of offenses ... in an indictment ... appears to prejudice a defendant or the government, the court may order separate trials of counts ... or provide any other relief that justice requires.

Fed.R.Crim.P. 14(a).

The government provided the following basis for the joinder of Counts One through Eight with Count Nine:

> Pearson's offenses are of the same or similar character, that is, financial fraud. Pearson's offenses are also based on the same acts or transactions, in that the money she received from Wilson disqualified her from receiving federal housing benefits, while her receipt of federal housing benefits and claimed homelessness belied her

4

stories to Wilson and detectives that she was a successful businesswoman. Similarly, Pearson's activities in St. Louis, such as gambling, buying a house and vehicles, prove both her fraudulent intent in spending Marva Wilson's money, as well as her housing fraud for living in St. Louis while receiving federal housing benefits in Kansas City. All charged offenses were part of Pearson's common scheme of plan – to receive money and benefits to which she was not entitled by defrauding individuals and institutions – Wilson, the Internal Revenue Service, and the Department of Housing and Urban Development. Finally, all of Pearson's charges occurred in the same time period, 2010 – 2011.

(Government's Opposition to Defendant's Motion to Sever (doc #51) at 4-5) In support of its argument, the government cites United States v. Robinson, 781 F.3d 453 (8th Cir.), cert. denied, 136 S.Ct. 596 (2015), a case in which the Eighth Circuit Court of Appeals found that charges against defendant Robinson for fraud and federal program theft in regard to a school for which Robinson served as the chairman of the board were properly joined with charges against Robinson for federal program theft in regard to Robinson's employment as a parking meter inspector. The court found that "[t]he rules are to be liberally construed in favor of joinder." 781 F.3d at 460. Because the two schemes were similar in character (both involved fraud upon an employer), the evidence overlapped (Robinson's day-to-day involvement at the school was admissible to show he was not inspecting parking meters) and both schemes occurred in the same time frame, the court found that joinder was appropriate. Id.

Defendant argues that the government is now trying to impermissibly alter the theory of fraud stated in the indictment. (Defendant's Reply to Government's Opposition to Defendant's Motion to Sever Counts for Trial (doc #55) at 2) According to defendant, the indictment does not allege that defendant made a false affirmative representation to Wilson that she was a successful businessperson; rather the indictment only alleges that "Pearson materially omitted to disclose to Wilson that she would use the money to gamble and for her own personal expenses." (Id.) Further, defendant argues that Counts One through Eight and Count Nine are not of sufficient

5

similar character to be joined. (Id. at 4)

The Court notes that in addition to the quote that "Pearson materially omitted to disclose to Wilson that she would use the money to gamble and for her own personal expenses," the indictment also states that the money transfers from Marva Wilson to an account of a "nonprofit entity" which was created by defendant Pearson and to which Pearson had sole signature authority were either considered an investment or a business loan. (Indictment (doc #1) at ¶¶ 2, 4 and 5) The indictment further states that "Pearson deposited a total of $38,170 into Wilson's account disguised as annuity or allowance payments." (Id. at ¶ 7) In addition, the indictment states that Pearson told law enforcement that the money from Wilson was an investment, that the money was used for business, that Pearson had two other investors and that Pearson produced a supposed loan agreement in which Wilson was referred to as an investor. (Id. at ¶¶ 10 and 11) Based on its reading of the indictment, the Court finds that Ms. Wilson was led to believe by defendant Pearson that she was either investing with Pearson or loaning money to Pearson's nonprofit entity, either way expecting to receive a return on the investment and/or the loan. It stretches the imagination to believe that Ms. Wilson would have invested with and/or loaned her money to Pearson unless she believed that Pearson was "successful," i.e. capable of providing her with a return on the investment and/or the loan. Contrary to defendant's argument, the Court finds that the government's assertion in its response that defendant falsely represented to Ms. Wilson and law enforcement that she was a "successful businessperson" and that her receipt of benefits belies this representation is not contrary to the theory of fraud set forth in the indictment.

Based on the reasoning of the Eighth Circuit Court of Appeals in United States v. Robinson, 781 F.3d 453 (8th Cir. 2015), and given the basis for the joinder of the counts as set forth by the government in its briefing, the Court finds that Counts One through Eight are properly

6

joined with Count Nine.

When joinder is proper under Rule 8, the defendant seeking a severance bears the burden of establishing prejudice. See United States v. Garrett, 648 F.3d 618, 626 (8th Cir. 2011). Rule 14 relief lies within the discretion of the trial court. See Zafiro v. United States, 506 U.S. 534, 541 (1993).

Defendant Pearson claims the following prejudice:

> Here, Ms. Pearson respectfully submits to the Court that she may be inclined to testify on her own behalf concerning the Wilson Counts (Counts 1 through 8), in order to fully educate the jury fully [sic] concerning her own dealings over time with Ms. Wilson and the multiple business dealings in which she engaged. On the other hand, Ms. Pearson would likely elect to exercise her Fifth Amendment rights concerning the Weston Count (Count 9).
>
> Due to the privileged nature of the information which Ms. Pearson would have to reveal in order for the Court to evaluate this claim of prejudice, the undersigned counsel respectfully suggests that the Court permit him to submit a written proffer, made *ex parte* and *in camera* to the Court (or filed under seal), summarizing Ms. Pearson's possible testimony concerning the Wilson Counts, and supplying a statement of reasons of why she may elect to exercise her Fifth Amendment rights concerning the Weston Count. …

(Defendant's Reply to Government's Opposition to Defendant's Motion to Sever Counts for Trial (doc #55) at 6-7)

The Eighth Circuit Court of Appeals has found:

> … Severance of counts is required [when a defendant would testify on his own behalf on some counts, but desires to assert his Fifth Amendment rights as to other counts] "only when a defendant has made a 'convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" United States v. Jardan, 552 F.2d 216, 220 (8th Cir. 1977) (quoting Baker v. United States, 401 F.2d 958, 977 (D.C. Cir. 1968)). "In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying." Id.

(quoting Baker, 401 F.2d at 977).

United States v. Mann, 701 F.3d 274, 291 n.9 (8th Cir. 2012), cert. denied, 134 S.Ct. 470 (2013).

The Court will give defendant Pearson the opportunity to submit a written proffer, made ex parte and filed under seal, summarizing defendant's possible testimony concerning Counts One through Eight, and supplying a statement of reasons of why she may elect to exercise her Fifth Amendment rights concerning Count Nine. Such proffer should be filed on or before October 19, 2016.

### III. CONCLUSION

Rules 8 and 14 are designed to promote judicial economy and efficiency and to avoid a multiplicity of trials as long as these objectives can be achieved without substantial prejudice to the right of the defendant to a fair trial. See Zafiro v. United States, 506 U.S. 534, 540 (1993). Given the Court's findings that Counts One through Eight are properly joined with Count Nine, the Court must determine defendant's claim of prejudice. Therefore, it is

ORDERED that or before October 19, 2016, defendant Pearson shall submit a written proffer, made ex parte and filed under seal, summarizing defendant's possible testimony concerning Counts One through Eight, and supplying a statement of reasons of why she may elect to exercise her Fifth Amendment rights concerning Count Nine.

/s/ Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE